UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JLM CHEMICALS, INC.,

                Plaintiff,

  - against -

SUMMIT RESOURCE GROUP, INC., CRAIG CATALDI and MICHAEL JEFFERS,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 24, 2009

08 Civ. 10296 (PAC)

<u>MEMORANDUM ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff JLM Chemicals, Inc. ("JLM") brings this action against Defendants Summit Resource Group, Inc. ("Summit"), Craig Cataldi ("Cataldi"), and Michael Jeffers ("Jeffers") alleging that: (1) Summit breached two contracts for the purchase of the chemical glycine from JLM; (2) Summit, Cataldi, and Jeffers engaged in "fraud, collusion and/or conspiracy" against JLM; and (3) Summit breached a third contract for the purchase of the chemical pirosil from JLM. Defendants move to dismiss JLM's Complaint in its entirety pursuant to Rules 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure.

The threshold issue for this Court is whether it has personal jurisdiction over the Defendants. JLM is a Delaware corporation located in Florida. Summit is a Missouri corporation located in Missouri. Cataldi is a resident of Missouri, and Jeffers is a resident of New Mexico. None of the Defendants are subject to the Court's jurisdiction pursuant to N.Y. C.P.L.R. § 301. Summit does not do business in New York "with a fair measure of permanence and continuity." <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 95 (2d Cir. 2000) (citation and internal quotation marks omitted). Neither Cataldi nor Jeffers does business in New York

1

personally or individually. Bradley v. Staubach, No. 03 Civ. 4160 (SAS), 2004 WL 830066, at *4 (S.D.N.Y. Apr. 13, 2004).  Likewise, none of the Defendants are subject to jurisdiction pursuant to N.Y. C.P.L.R. § 302 because they did not "engage[] in some purposeful activity in [New York] in connection with the matter in suit." Longines-Wittnauser Watch Co. v. Barnes & Reineke, Inc., 15 N.Y.2d 443, 457 (1965).[1]

Instead, JLM attempts to establish jurisdiction over Defendants in this Court on the basis of an arbitration clause that appeared on the backs of two Purchase Orders relating to the contracts for glycine that Summit is alleged to have breached (the "Arbitration Clause").  The Arbitration Clause reads, in part:

> This Agreement shall be governed by and construed according to the law of the State of New York.  Any and all differences and disputes of any nature arising out of this Agreement shall be put to arbitration in the City of New York, before a panel of three persons, consisting of one arbitrator to be appointed by the Seller, one by the Buyer and one by the two so chosen.

(See Declaration of Craig Cataldi ("Cataldi Decl.") Exs. A, B (Purchase Orders).)  JLM claims that, by accepting the Purchase Orders and failing to object to the Arbitration Clause, Defendants submitted to the jurisdiction of New York federal courts.

Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, 553 F.2d 842 (2d Cir. 1977), teaches that arbitration clauses such as the one at issue in the present case may vest courts with jurisdiction over defendants who otherwise have no connection to the forum.  The Lecopulos court held that an arbitration clause contained in a Commodity Account Agreement signed by the defendant Lecopulos was sufficient to establish jurisdiction over him in the Southern District of

---

[1] In its brief in opposition to Defendants' motion to dismiss, JLM suggests that N.Y. C.P.L.R. § 302 might confer jurisdiction over Defendants because "JLM believes that Jeffers was in New York City in 2008, on behalf of himself, Cataldi and Summit in furtherance of their fraudulent enterprise."  (Pl. Mem. in Opp. to Defs. Motion to Dismiss ("Pl. Opp.") at 24.)  The Court, however, cannot base jurisdiction on an unsupported allegation that does not even appear in the Complaint.

New York even though Lecopulos was a citizen of Greece and all of his contact with the plaintiff Merrill Lynch was through Merrill Lynch's London office. 553 F.2d at 843-44.

Although Lecopulos controls this Court's inquiry,[2] it is important to recognize two important factual differences between that case and the present matter. First, the Lecopulos court noted that Lecopulos "apparently did realize…that future transactions he authorized would occur in New York." Id. at 843. In other words, even though Lecopulos' contact was solely with Merrill Lynch's London office, Lecopulos knew that he was dealing with a major American commodity broker headquartered in New York. By contrast, Summit, a Missouri corporation, had no basis for realizing that its purchase of chemicals through JLM, a Delaware corporation located in Florida, would trigger any occurrences in New York.

Second, in Lecopulos, the defendant actively assented to the arbitration clause at the outset of his relationship with the plaintiff by traveling to London and signing the Commodity Account Agreement in which the clause was contained. Id. In the present matter, the Arbitration Clause was not contained in any paperwork that Summit signed, nor was it provided to Summit at the time Summit agreed to purchase glycine from JLM on July 15, 2008—instead, it appeared on the backs of Purchase Orders sent to Summit by JLM on December 4, 2008, nearly five months after Summit placed its orders.

The timing of JLM's delivery of the Purchase Orders containing the Arbitration Clause is

---

[2] Defendants direct the Court to Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McLeod, 622 N.Y.S.2d 954 (App. Div. 1st Dep't 1995), which disagrees with the holding in Lecopulos. The Court, however, must follow Second Circuit, rather than state court, precedent. Moreover, the reason for the McLeod court's disagreement with Lecopulos does not apply in the present case. Both McLeod and Lecopulos involved choice-of-law clauses, i.e. clauses indicating that New York law would govern any future arbitration, but the clauses were silent on the location of the arbitration. McLeod, 622 N.Y.S.2d at 955. The McLeod court held that the Lecopulos court, in reaching its decision, erroneously relied on Victory Transport, Inc. v. Comisaria General, 336 F.2d 354 (2d Cir. 1964), which involved a choice-of-forum clause, i.e. a clause indicating that arbitration would occur in New York. N.Y.S.2d at 955. The McLeod court held that a mere choice-of-law clause "might suggest an appropriate legal framework for the arbitral process, but it does not alone confer jurisdiction." Id. This distinction has no bearing on the present matter because the Arbitration Clause at issue states both that New York law would govern any future arbitration and that the arbitration would occur in New York City.

relevant when viewed in light of the broader contours of the parties' dispute over the glycine contracts. Summit contends that, on November 3, 2008, it contacted JLM and canceled the contracts in a timely and appropriate manner, but JLM refused to accept the cancellation. On November 24, 2008, Summit filed a motion for a temporary restraining order in Missouri state court, asking the court to enjoin JLM from shipping the glycine. Summit's motion was granted.

On November 26, JLM removed the matter to the U.S. District Court for the Eastern District of Missouri and, on that same day, filed the instant matter in the Southern District of New York. Summit then filed a motion for preliminary injunction in the Eastern District of Missouri on November 28. Judge Autrey of the Eastern District of Missouri conducted a hearing on Summit's motion on December 4 and, in an Opinion & Order dated December 29, granted Summit's motion based in part on his finding that Summit canceled the glycine contracts on November 3. (See Declaration of David A. Rich ("Rich Decl.") Ex. D (Opinion, Memorandum and Order) at 4-5.)

The upshot of this timeline is that JLM is attempting to establish jurisdiction in this Court based upon an Arbitration Clause contained on the back of Purchase Orders that were delivered to Defendants (1) nearly five months after Summit's original orders were placed; (2) roughly one month after Summit attempted to cancel the contracts (an attempt which Judge Autrey deemed to be successful); (3) more than a week after Summit commenced a lawsuit in Missouri state court involving the glycine contracts, which JLM itself removed to federal court; and, most incredibly, (4) more than a week after JLM filed the instant Complaint in the Southern District of New York, i.e. the Complaint for which the Arbitration Clause allegedly provides jurisdiction. This attempted feat of prestidigitation falls flat. The Court finds that an Arbitration Clause contained on the back of unsigned Purchase Orders sent to Defendants almost three weeks into an actively

4

litigated contract dispute between two non-New York parties does not give the Court jurisdiction. Given this uncontested history of litigation, it is simply not possible for JLM to maintain that Summit "accepted" the December 4, 2008 Purchase Orders.

JLM argues that the timing of the delivery of the Purchase Orders is irrelevant given the record of past dealings between the parties. First, it argues that JLM always sent Purchase Orders to Summit months after Summit's orders were placed because its policy was to send Purchase Orders only when the product was ready to ship. (See Letter from Eric D. Grayson dated Apr. 23, 2009 ("Grayson Letter"); Affidavit of John L. Macdonald ("Macdonald Aff.") Ex. A.) Even so, it cannot explain why this Court has jurisdiction over this particular lawsuit based on these two Purchase Orders—which Defendants did not receive until eight days after JLM filed suit in this District.

JLM further argues that the Arbitration Clause was contained in each of the Purchase Orders that JLM previously sent to Summit over the course of their relationship. Since Summit repeatedly received the Arbitration Clause and never objected to it, it is bound by that clause. The cases JLM cites in support of this proposition, however, are quite different from this dispute. See, e.g., Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 293, 295-96 (2d Cir. 1999) (arbitration clause was contained in the disputed confirmation documents and record contained evidence that arbitration was common in the industry); Pervel Industries v. T M Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir. 1989) (arbitration clause contained in the disputed purchase orders, some purchase orders were signed and returned, and court took notice of evidence that arbitration was standard in the industry); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845-46 (2d Cir. 1987) (arbitration clause was contained in the disputed purchase orders and plaintiff had formally agreed to the arbitration clause by signing and

returning some past purchase orders); Infinity Indus., Inc. v. Rexall Sundown, Inc., 71 F. Supp. 2d 168, 169-72 (E.D.N.Y. 1999) (arbitration clause was contained in the disputed purchase orders and also in a confidentiality agreement signed by the parties). Here, Summit did not receive the glycine Purchase Orders containing the Arbitration Clause until after litigation had commenced. Moreover, the Arbitration Clause is merely a provision in a JLM form, and there is no evidence that Summit ever signed and returned any of the previous Purchase Orders. Similarly, JLM presents no evidence that arbitration is standard in the industry. There is simply no basis for the Plaintiff's assertion of the Court's jurisdiction.

Since the Court does not have jurisdiction over this dispute, it does not consider Defendants' Rule 9(b) and 12(b)(6) arguments in favor of dismissing JLM's claims.

For the foregoing reasons, Plaintiff JLM's Complaint is DISMISSED for lack of jurisdiction. The Clerk of the Court is directed to close this matter.

Dated: New York, New York
April 24, 2009

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge